UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ERIC MARQUEZ, *et al.*,<br><br>Defendants. | Case No. CR16-287JLR<br><br>ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS WIRETAP EVIDENCE |

## I. INTRODUCTION

This matter is before the Court on Defendant Hector Hugo Garcia Gutierrez's Motion to Suppress Wiretap Evidence. Dkt. #434. For the reasons discussed herein, the Court DENIES Mr. Garcia Gutierrez's motion.

## II. BACKGROUND

Mr. Garcia Gutierrez was arrested in November 2016 for his alleged involvement with a drug trafficking organization ("Reyes Garcia DTO") operating in the Western District of Washington and elsewhere. *See* Dkts. #1 and #50. At the time of his arrest, Mr. Garcia Gutierrez was one of fourteen individuals charged with conspiring to distribute controlled substances, including methamphetamine, heroin, and cocaine. Dkt. #1 at 2. In a Second Superseding Indictment, Mr. Garcia Gutierrez was ultimately charged with one count of Conspiracy to Distribute Controlled Substances (Count 1), one count of Conspiracy to Commit Money

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS WIRETAP EVIDENCE - 1

Laundering (Count 2), four counts of Distribution of a Controlled Substance (Count 5, Count 9, Count 12, and Count 16), and seven counts of Possession of Controlled Substances with Intent to Distribute (Counts 19–23, Counts 25–26). Dkt. #374 at 1–11.

Before bringing charges against Mr. Garcia Gutierrez, the government applied for a court order authorizing it to intercept the wire communications of telephone number (253) 259-4356 ("TT12"); the government supported this application with the affidavit of Special Agent ("SA") Benjamin Gerrol. *See* Dkt. #434, Ex. A.[1] In its application, the government identified the following three objectives they hoped to accomplish through their wiretap investigation: (1) successful prosecution of the leaders and members of the Reyes Garcia DTO who operate in the Western District of Washington and elsewhere; (2) dismantling the Reyes Garcia DTO; and (3) identification and seizure of contraband, criminally derived assets, and the tools used by the Reyes Garcia DTO. *Id.* ¶ 14.

The Court granted the requested wiretap order, and Mr. Garcia Gutierrez contends the information obtained through intercepted wire communications led to his eventual arrest in November 2016. *See* Dkt. #434 at 2–3. Mr. Garcia Gutierrez now argues that SA Gerrol's affidavit did not establish necessity, as required by Section 2518 of Title 18 of the United States Code, because, when the request was made, the government already had "substantial" evidence to meet its stated objectives. *Id.* at 3–4, 11. The government disagrees, and argues that SA Gerrol's affidavit established the requisite necessity and the Court did not abuse its discretion in making this determination and authorizing the requested wiretap. *See* Dkts. #466 at 7 and #485 at 1.

---

[1] Although the Court cites to a redacted version of SA Gerrol's affidavit, the Court reviewed the unredacted copy of the government's wiretap application in deciding this motion. In an effort to preserve the confidentiality of the redacted portions of SA Gerrol's affidavit, the Court discusses this information in general terms. Discussion of this information in this manner is not intended to imply that the Court did not examine the entire record before it.

## III. STANDARD OF REVIEW

In limited situations, Title III of the Omnibus Crime Control and Safe Streets Act (the "Act") permits law enforcement officers to use wiretaps. *United States v. Rodriguez*, 851 F.3d 931, 937 (9th Cir. 2017) (citing 18 U.S.C. §§ 2510–2522). However, Section 2518(1) of the Act requires law enforcement officials to apply for a court order to use wiretaps; Section 2518(1) sets forth the statutory requirements each application must satisfy. *Id*. Amongst other requirements, an application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." § 2518(1)(c). A law enforcement official's sworn affidavit may satisfy this requirement. *Rodriguez*, 851 F.3d at 937. If an application meets Section 2518(1)'s requirements, one determination a judge must then make is whether, based on the facts submitted by an applicant, "normal investigative procedures have been tried and have reasonably failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." § 2518(3)(c). "Taken together, §§ 2518(1)(c) and (3)(c) require a showing of necessity before a district court can issue a wiretap order." *United States v. Carneiro*, 861 F.2d 1171, 1176 (9th Cir. 1988). Wiretap evidence may be suppressed if a reviewing court determines this evidence was obtained in violation of the Act. *Rodriguez*, 851 F.3d at 937 (citing 18 U.S.C. § 2515).

When reviewing a defendant's challenge to a court's issuance of an order authorizing a wiretap, reviewing district courts must conduct a two-step review. *Id*., at 937–38 ("[D]istrict courts should apply the Ninth Circuit's two-step approach when considering a motion to suppress wiretap evidence."). Under this two-step review the reviewing court must first review, de novo, whether the application for a wiretap contains a full and complete statement of facts as required by Section 2518(1)(c). *Id*. at 938 (citing *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1111–

12 (9th Cir. 2005)). If the reviewing court determines an application meets this requirement, it must then "review for 'abuse of discretion the issuing judge's conclusion that the wiretap was necessary.'" *Id.* (quoting *United States v. Rivera*, 527 F.3d 891, 898 (9th Cir. 2008)). "Only the evidence presented within the four corners of the wiretap application can be used to evaluate necessity." *Gonzalez, Inc.*, 412 F.3d at 1112.

## IV. ANALYSIS

Under the standards governing this Court's analysis, the Court first considers, de novo, whether the government's application for a wiretap contained "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). If the court determines this requirement is met, it will then review, under an abuse of discretion standard, whether it was properly determined "on the basis of the facts submitted by the applicant [in the affidavits] that . . . normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed or to be too dangerous." 18 U.S.C. § 2518(3)(c).

**A. The Government's Wiretap Application Satisfies Section 2518(1)(c).**

The Court finds that SA Gerrol's affidavit, submitted to support the Government's wiretap application, satisfies Section 2518(1)(c), as it contains a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."

In his 155-page affidavit, SA Gerrol explains six related and unrelated investigations conducted that potentially could have revealed information about the Reyes Garcia DTO. Dkt. #434, Ex. A at ¶¶ 193–215. In explaining those investigations, SA Gerrol details the limitations

of the information obtained from those investigations, and also explains why furtherance of these investigations was unlikely to generate additional information about the Reyes Garcia DTO's known and unknown associates (information crucial to achieving the investigation's stated objectives). *Id.* SA Gerrol's affidavit not only details specific information about the scope of these six investigations, it also explains how confidential sources were used in those investigations and how the compartmentalized nature of the Reyes Garcia DTO did not allow investigators to obtain enough information to achieve the investigation's objectives. *See id.* ¶¶ 224–43.

The affidavit also details information obtained through prior Title III wiretaps (obtained in 2013 and 2014), and explains how those wiretaps targeted drug suppliers unrelated to the Reyes Garcia DTO and thus did not help investigators better understand the structure of the Reyes Garcia DTO. *Id.* ¶¶ 216–18. Telephone tolls, pen registers, and trap and trace devices were also used by investigators, and SA Gerrol's affidavit explains the inherent limitations of these technologies (*e.g.*, phone toll records provide limited information and cannot detail the substance of communications or identify the actual user of a phone) and the limited information obtained through their use. *Id.* ¶¶ 219–22. SA Gerrol's affidavit also explains how the government used a cell-site simulator in the vicinity of Mr. Garcia Gutierrez and two of his co-defendants, but explains how this investigative technique resulted in very little information. *Id.* ¶ 223. Specifically, SA Gerrol detailed how cell-site simulators require investigators to surveil targets over long periods of time, and explained how Mr. Garcia Gutierrez's and two of his co-defendants' actions during surveillance efforts indicated these Reyes Garcia DTO members may have been aware of the government's surveillance attempts. *Id.* SA Gerrol thus explained how

the benefits associated with cell-site simulators in this investigation were outweighed by the risks associated with this technology. *Id*.

The use of undercover officers to obtain more information about the Reyes Garcia DTO is also detailed in SA Gerrol's affidavit. *See* Dkt. #434, Ex. A ¶¶ 247–54. The affidavit explains that use of an undercover officer to facilitate a transborder drug purchase was not feasible for several reasons, including because the resources necessary to conduct the purchase were not available. *See id*. ¶¶ 248–51. Notably, even if the required resources were available, this drug purchase would have required the government to seize the proposed drug shipment, thereby alerting the Reyes Garcia DTO of the government's investigation and effectively ending the government's attempt to meet its stated objectives. *Id*. The safety of one of the government's confidential sources, as well as the safety of undercover officers, also played a role in the government's determination that the risks associated with a transborder drug purchase (and the possibility of an undercover officer travelling to Mexico to meet a drug supplier) were not outweighed by the limited potential benefits. *See id*. ¶¶ 250–52.

Aside from the investigate techniques discussed above, SA Gerrol's affidavit also identified the following twelve investigative procedures used by investigators: (1) controlled purchases; (2) video surveillance; (3) GPS tracking of cell phones and vehicles; (4) physical surveillance; (5) subpoenas; (6) trash searches; (7) mail covers; (8) search warrants; (9) border searches; (10) arrests; (11) financial investigations; and (12) reviews of social media. Dkt. #434, Ex. A ¶¶ 244–46, 259–338, 343–55. For each investigative technique the affidavit either explains the specific information obtained because of the technique, or explains why the investigative technique resulted in information of limited value. *See id*. Additionally, the affidavit explains it was not feasible to interview investigation targets and witnesses because these interviews would

have revealed the existence of the government's investigation, and the compartmentalized nature of drug trafficking organizations makes it unlikely that any one person interviewed could have provided the government with enough information to meet its objectives. *Id*. ¶¶ 255–58. The use of grand jury subpoenas was deemed equally unlikely to help meet the government's investigative goals, as the government feared any witness called would have notified other Reyes Garcia DTO members of the government's investigation. *See id*. ¶¶ 339–42. SA Gerrol's affidavit also explained that seeking testimony through a grand jury was unlikely to be successful as members of the Reyes Garcia DTO appeared to be trusted associates, and potentially even family members. *Id*. ¶ 339.

Given SA Gerrol's detailed account of the procedures used and not used to investigate the Reyes Garcia DTO, the Court finds the government's application for a wiretap contained "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c).

Mr. Garcia Gutierrez's arguments to the contrary do not convince the Court otherwise. First, given the government's stated goal of identifying the scope of the Reyes Garcia DTO in order to dismantle it, the Court is not convinced by Mr. Garcia Gutierrez's argument that the government's "substantial evidence" against him would meet the government's objective of identifying other members of the Reyes Garcia DTO. *See* Dkt. #434 at 3, 11. As explained in SA Gerrol's affidavit, although the government knew of Mr. Garcia Gutierrez, the government's goals went far beyond mere identification of one Reyes Garcia DTO member. At the time of the wiretap application the government was not aware of the DTO's scope, and identification of

some DTO members was unlikely to help dismantle the DTO if other, unknown members remained active.

Mr. Garcia Gutierrez's dissatisfaction with the government's decision not to use undercover officers and confidential sources in a transborder drug purchase also does not convince the Court that the government's wiretap application fails to satisfy Section 2518(1)(c). *See* Dkt. #476 at 3–4. As outlined above, SA Gerrol's affidavit explained why using its undercover officer in a transborder drug transaction was not feasible.

Finally, the Court does not agree that SA Gerrol's affidavit merely contains boilerplate language in assessing the limitations of several traditional, investigative tools. *See id*. at 4 (contending that boilerplate language in SA Gerrol's discussion of pen registers, tracking devices, witness interviews, grand jury investigations, video surveillance, GPS tracking, physical surveillance, subpoenas of financial institutions, trash searches, and the review of social media). While the Court agrees that SA Gerrol's affidavit may contain some boilerplate conclusions with respect to the use of phone tolls, witness interviews, and grand jury investigations, as explained by the Ninth Circuit, "[s]ome boilerplate language . . . is not fatal as we evaluate the level of detail in the affidavit *as a whole*, rather than piecemeal." *Rodriguez*, 851 F.3d at 942 (internal quotation omitted) (emphasis in original). Additionally, any use of boilerplate in other sections of SA Gerrol's affidavit is accompanied by case-specific reasons explaining why the technique in question would likely be ineffective. *See United States v. Christie*, 825 F.3d 1048, 1068 (9th Cir. 2016) (finding that affidavit sections containing some boilerplate language satisfied Section 2518(1)(c) where each section "also gives several case-specific reasons why continued use of the technique in question would likely be ineffective without a wiretap.").

In summary, the Court finds that SA Gerrol's affidavit satisfies Section 2518(1)(c).

**B. The Court Did Not Abuse Its Discretion in Finding Necessity.**

The Court also finds that the issuing court did not abuse its discretion in finding the requisite necessity to warrant the issuance of a wiretap order. To determine if the issuing judge properly determined the need for a Title III wiretap, the Court must use "a 'common sense approach' to evaluate the reasonableness of the government's good faith efforts to use traditional investigative tactics or its decision to forego such tactics based on the unlikelihood of their success." *Christie*, 825 F.3d at 1068 (quoting *Gonzalez, Inc.*, 412 F.3d at 1112). Additionally, issuing judges are given "'considerable discretion in finding necessity, particularly when the case involves the investigation of a conspiracy,' so our standard of review is deferential." *Rodriguez*, 851 F.3d at 944 (internal citations omitted). Considering that SA Gerrol's affidavit detailed the investigative procedures used, and explained why some investigative techniques were not used, along with the government's stated objectives of identifying the unknown members of the Reyes Garcia DTO in order to successfully dismantle the organization, the Court finds that the issuing judge did not abuse his discretion in finding the requisite necessity to authorize the government's requested wiretap.

## V. CONCLUSION

Having reviewed Mr. Garcia Gutierrez's motion, the government's opposition thereto, Mr. Garcia Gutierrez's reply, the government's surreply, and the remainder of the record, the Court hereby finds and ORDERS Mr. Garcia Gutierrez's Motion to Suppress Wiretap Evidence (Dkt. #434) is DENIED.

DATED this 29th day of August, 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE